THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**CHOICE HOTELS INTERNATIONAL, INC.,**

        Plaintiff,

v.                                       Civil Action No. 2:13-CV-23
                                                  (BAILEY)

**JAMES G. FISHER, II** and
**PATRICIA FISHER,**

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST DEFENDANT JAMES G. FISHER, II, AND DENYING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

On this day, the above-styled matter came before this Court for consideration of the parties' cross Motions for Summary Judgment [Docs. 30 & 32]. Having been fully briefed, the Motions are now ripe for disposition.[1] For the reasons stated below, the Plaintiff's Motion for Summary Judgment [Doc. 30] is **GRANTED**, and the Defendant's Motion for Partial Summary Judgment [Doc. 32] is **DENIED**.

I.     Facts

This is a civil action brought by Choice Hotels seeking damages and injunctive relief arising out of a franchise agreement for an Econo Lodge facility in Elkins, West Virginia. According to the Complaint [Doc. 1], on or about May 16, 1995, Choice Hotels entered into

---

[1] This Court notes that while the defendant did not file a reply to his Motion, the time period to do so has expired.

a Franchise Agreement with James G. Fisher, II and Patricia P. Fisher,[2] which permitted Fisher to operate an Econo Lodge hotel franchise at Route 1, Box 15, Elkins, West Virginia. [Doc. 23, ¶ 34]. The Franchise Agreement specifically licensed the Econo Lodge family of marks to the Fishers for so long as the Franchise Agreement remained in effect. [Doc. 23, ¶ 35].

Paragraph 12 of the Franchise Agreement provides that upon termination, the Fishers must immediately discontinue use of Proprietary Marks belonging to Choice Hotels and specifically prohibits the Fishers from identifying the hotel at the Subject Property as an Econo Lodge or former Econo Lodge hotel. [Doc. 23, ¶ 36].

According to the Amended Complaint, prior to February 19, 2009, the Fishers defaulted on their material obligations under the Franchise Agreement. [Doc. 23, ¶ 37]. On or about February 19, 2009, Choice Hotels issued a Notice of Termination, via Certified Mail, to the Fishers. [Doc. 23, ¶ 38].

On or about June 17, 2009, Choice Hotels and the Fishers entered into a Reinstatement Agreement which permitted the Fishers to bring the Subject Property back into the Choice Hotels system upon completion of renovations at the Subject Property and the Fisher's demonstrated compliance with Choice Hotels' brand standards. [Doc. 23, ¶ 39]. The Reinstatement Agreement specifically provided that the renovations and brand compliance had to be completed "before entering the ECONO LODGE System, but in no event later than twelve (12) months after execution of this Agreement." [Doc. 23, ¶ 40]. The Fishers did not make the necessary renovations or establish compliance with Choice

---

[2] On April 26, 2013, defendant James Fisher, II filed a Suggestion of Death noting that Patricia Fisher died in July, 2012 [Doc. 10].

Hotels' brand standards by the June 17, 2010, deadline. [Doc. 23, ¶ 41].

Choice Hotels issued multiple Notices of Default to the Fishers (September 22, 2010; September 27, 2010; and May 23, 2011), all via either certified mail or FedEx, advising the Fishers of the defaults and providing them with an opportunity to take curative action. [Doc. 23, ¶ 44]. The Fishers did not cure the defaults. [Doc. 23, ¶ 45]. Accordingly, on or about November 14, 2011, Choice Hotels issued a Notice of Termination, via FedEx, to the Fishers. [Doc. 23, ¶ 46]. The Notice of Termination instructed the Fishers to immediately cease and desist use of any and all marks owned by Choice Hotels. [Doc. 23, ¶ 47]. Fisher continued to utilize the name and marks of Choice Hotels, and this litigation ensued. [Doc. 23, ¶ 52].

II.  Procedural History

The plaintiff filed its Complaint in this Court on March 21, 2013 [Doc. 1]. Thereafter, plaintiff filed its Amended Complaint [Doc. 23] on August 1, 2013.[3] The Amended Complaint alleges claims against former franchisee James Fisher, II for federal trademark infringement, federal unfair competition, common law trademark infringement / unfair competition, and breach of contract. The plaintiff seeks, *inter alia*, injunctive relief forever enjoining the defendant from using any of the ECONO LODGE family of marks, damages under the Lanham Act, and damages resulting from breach of the Franchise Agreement and Reinstatement Agreement.

On August 21, 2013, the defendants filed their Answer [Doc. 24] to the Amended Complaint, wherein defendants assert a Counterclaim against the plaintiff for breaching the

---

[3] The Amended Complaint [Doc. 23] asserts the additional claim for breach of contract.

Franchise Agreement by terminating it without cause. Defendant's Motion for Partial Summary Judgment asserts, *inter alia*, statute of limitations defenses.

III. Legal Standard

Rule 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp**., 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations

4

omitted).

IV. Discussion

**Plaintiff's Motion for Summary Judgment**

Plaintiff seeks summary judgment on all counts and on the Counterclaim. The defendant's entire response argues that a genuine issue of material fact exists as to the identity of the entity allegedly infringing upon the plaintiff's ECONO LODGE marks. The defendant asserts that the subject hotel is operated by a third party, Crossroads Hospitality, Inc. This Court will address each argument in turn.

A. Federal Trademark Infringement (Count I)

"To establish a trademark infringement under the Lanham Act, a plaintiff must prove: (1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." ***Rosetta Stone Ltd. v. Google, Inc.***, 676 F.3d 144, 152 (4th Cir. 2012)(citing 15 U.S.C. § 1114(a)).

Plaintiff alleges, and the defendant admits that it owns the various ECONO LODGE family of marks. See [Doc. 24, at ¶ 17]. It is further undisputed that the defendant "used the mark . . . 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services." (Id. at ¶ 34). This Court also finds that there is no dispute that the defendant's continued use of the mark would confuse consumers. The only element of trademark infringement that is in dispute appears to be whether the defendant's use of the

5

mark is without the plaintiff's authorization. This dispute is two-pronged: The defendant asserts first, that his use of the marks is valid and second, that the true party in interest is Crossroads Hospitality, Inc.

"A plaintiff asserting an infringement claim under the Lanham Act must prove that it has a valid, protectable trademark and that the defendant is infringing its mark by creating confusion, or a likelihood thereof, by causing mistake, or by deceiving as to the attributes of its mark. See 15 U.S.C. §§ 1114, 1125; **Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.**, 130 F.3d 88, 91 (4th Cir. 1997). In determining whether the plaintiff has proven a likelihood of confusion, we consider, among other factors, '(1) the strength or distinctiveness of the plaintiff's mark, (2) the similarity of the two parties' marks, (3) the similarity of the goods and services the marks identify, (4) the similarity of the facilities the two parties use in their businesses, (5) the similarity of advertising used by the two parties, (6) the defendant's intent, and (7) actual confusion.' **Petro Stopphing Ctrs.**, 130 F.3d at 91 (citing **Pizzeria Uno Corp. v. Temple**, 747 F.2d 1522, 1527 (4th Cir. 1984))." **Lyons P'ship, L.P. v. Morris Costumes, Inc.**, 243 F.3d 789, 804 (4th Cir. 2001).

The Court went on to stress that "the seventh factor – actual confusion – is often paramount. When the plaintiff's mark is strong and the defendant's use of a similar mark 'has actually confused the public, our inquiry ends almost as soon as it begins.' **Sara Lee**, 81 F.3d at 467." **Id**. This Court can think of no better example of consumer confusion than that of a former franchise carrying on as if it were still a franchise. Continuing to do so represents the epitome of trademark infringement, the purpose of a franchise being the use that franchiser's particular trademark to conduct its business. See BLACK'S LAW DICTIONARY

6

668 (7th ed. 1999). Such is the case *sub judice*.

This Court finds the defendant's claim that there is a genuine issue of material fact regarding the true party in interest to be disingenuous. First, the Franchise Agreement [Doc. 1-9] is between the plaintiff and the Fishers. Second, Paragraph 10 of the Franchise Agreement provides that any assignment must have the written consent of the Franchisor, and that any assignment without such consent is null and void. Defendant has presented no evidence that any assignment was approved or consented to by the plaintiff. Third, Crossroads Hospitality was formed by the Fishers, and the entirety of the Board of Directors is comprised of Mr. Fisher and his since deceased wife. Fourth, regardless of the corporate structure, defendant Fisher remains personally liable for the acts of infringement. Under West Virginia law, "a corporation can act only through its agents or employees." **Cook v. Heck's, Inc.**, 176 W. Va. 368, 375, 342 S.E.2d 453, 460 (1986). In, **Musgrove v. Hickory Inn, Inc.**, 168 W. Va. 65, 69 (1981), the West Virginia Court of Appeals stated:

> "In this jurisdiction a joint action of tort may be instituted against a master and servant in a case in which plaintiff's injuries were occasioned solely by the negligence of the servant, ... The relation of master and servant in those cases, in which the doctrine of *respondeat superior* applies, is joint, and the parties should be regarded as though they were joint tortfeasors. **Wills v. Montfair Gas Coal Co.**, 97 W. Va. 476, 125 S.E. 367. In some respects, however, the relation may be regarded as joint, and several." 139 W. Va. at 111, 79 S.E.2d at 289-90.
>
> See also **O'Dell v. Univeral Credit Co.**, 118 W. Va. 678, 191 S.E. 568

(1937). Joint and several liability allows the plaintiff to sue either or both. ***Muldoon v. Kepner***, 141 W. Va. 577, 91 S.E.2d 727 (1956)(citations omitted).

> [T]he doctrine of *respondeat superior* does not relieve the servant of his tort liability. This principle rests on the fact that an agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. This same rule is generally accepted elsewhere. (Citations omitted).

***Musgrove***, 168 W. Va. at 69.

In ***Musgrove***, the Court held that "insofar as the individual liability of the [defendants] is concerned, the fact that they were acting individually or as agents is irrelevant. If they tortiously injured the plaintiff, they are liable." 168 W. Va. at 69. It follows that defendant Fisher's infringing conduct may give rise to both his individual liability and the liability of the corporate entity on whose behalf he was acting. Accordingly, the plaintiff asserts that the existence of Crossroads Hospitality is irrelevant to the inquiry of whether defendant Fisher infringed on Choice Hotels' trademarks. This Court agrees. The facts clearly establish that Fisher was, and continues to run a one-man operation, and any acts of infringement alleged are directly attributable to him. Accordingly, having established all the essential elements, the Motion for Summary Judgment is **GRANTED** insofar as it pertains to Count I.

    B.    <u>Federal Unfair Competition (Count II)</u>

The test for unfair competition under the Lanham Act is similar to that for

8

infringement. Under Section 43(a) of the Lanham Act for Federal Unfair Competition, the plaintiff must show: (1) that it owns a valid protectable mark and (2) that the defendant's use of a colorable imitation of that mark creates a likelihood of confusion. See 15 U.S.C. § 1125; **Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.**, 43 F.3d 922, 930 (4th Cir. 1995).

Again, it is not disputed that the ECONO LODGE marks at issue are valid and protectable. Furthermore, the marks continue to be used by the defendant in such a way to create a likelihood of confusion. The hotel at the Subject Property, a former Econo Lodge hotel, simply continues to carry on at least to some degree as if it were still an Econo Lodge franchise. Accordingly, having established the essential elements for Unfair Competition, the Motion for Summary Judgment is **GRANTED** insofar as it pertains to Count II.

    C.    <u>Common Law Trademark Infringement – Unfair Competition (Count III)</u>

The Supreme Court of Appeals of West Virginia has applied tests similar to the federal counterparts for trademark infringement and unfair competition. *See* **Foglesong v. Foglesong Funeral Home, Inc**., 149 W. Va. 454 (1965). Again, the focus is on confusion and injury. This Court will not belabor the point. For the same reasons stated above in Sections A and B, this Court **GRANTS** the Motion for Summary Judgment as to Count III.

    D.    <u>Breach of Contract (Count IV)</u>

"In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3)

9

damage arose from the breach." *Patrick v. PHH Mortgage Corp.*, 937 F.Supp.2d 773, 792 (N.D. W.Va. 2013)(citing *Wince v. Easterbrooke Cellular, Corp.*, 681 F.Supp.2d 688, 693 (N.D. W.Va. 2010)).

Plaintiff asserts in its Motion that the defendant has admitted all the essential elements for this breach of contract by failing to respond to the Request for Admissions propounded by Choice Hotels.

There is no dispute that a contract exists between the parties; i.e. the Franchise Agreement and Reinstatement Agreement. Further, the defendant defaulted on his material obligations under the Franchise Agreement and Reinstatement Agreements, constituting a breach thereof. As will be further explained below, the plaintiff suffered damages as a result of the breach. Having satisfied the necessary elements for breach of contract, this Court **GRANTS** the Motion for Summary Judgment as to Count IV.

E. <u>Defendant's Counterclaim for Breach of Contract</u>

Defendant Fisher asserted a counterclaim in his Answer for breach of contract against the plaintiff. Plaintiff previously filed a Motion to Dismiss the counterclaim [Doc. 13], which this Court denied by Order dated July 10, 2013 [Doc. 18]. At that time, this Court found that "[w]hile the allegations of the counterclaim appear[ed] to be bare bones" they were "sufficient to withstand the Rule 12(b)(6) challenge." (Id. at p. 5).

This matter is presently before the Court on summary judgment. Since its Order Denying the Motion to Dismiss the counterclaim, the plaintiff has issued its Interrogatories and Requests for Production of Documents [Docs. 28 & 29]. These inquiries asked the defendant to produce, *inter alia*, any evidence in defendant's possession that would support

its claim that the plaintiff terminated the Franchise Agreement without cause, or that would support any damages claim by the defendant. (Interrogs. 20 & 21); (Request for Prod. 21). Plaintiff Fisher never responded to any of these requests. As such, this Court finds that the defendant cannot produce any evidence to support his counterclaim. Accordingly, this Court **GRANTS** summary judgment in favor of the plaintiff as to the defendant's breach of contract counterclaim. Accordingly, the Counterclaim is hereby **DISMISSED**.

### Defendant's Motion for Partial Summary Judgment

A. Applicable Statute of Limitations for Counts I, II, and III

The defendant asserts a two year statute of limitations for the above counts pursuant to West Virginia Code § 55-2-12. The plaintiff is willing to concede this limitations period for the sake of argument, asserting its claims are timely regardless of the limitations period applied. This Court agrees.

The defendant argues that the clock began on plaintiff's claims on May 8, 2009. By Notice of Termination dated February 19, 2009, the plaintiff terminated the Franchise Agreement and declared that any use of its proprietary marks must cease immediately. On May 8, 2009, Fisher executed a Reinstatement Agreement, which contained several remedial measures which the plaintiff required the defendant to make. Plaintiff filed its Complaint on March 21, 2013.

The defendant asserts that the alleged acts of infringement are not a "continuing harm" which would restart the accrual of the date of injury. The plaintiff disagrees, stating that Fisher has continued to commit new acts of infringement as recently as December of 2013. Additionally, the plaintiff asserts that the termination of the Franchise Agreement /

Reinstatement Agreement which gave rise to this matter occurred on November 14, 2011, well within the limitations period. It is this second breach and termination which the plaintiff claims gives rise to the causes of action in this case. On June 21, 2012, Choice Hotels issued a Notice of Infringement to defendant Fisher. The Complaint was filed nine (9) months later.

The plaintiff cites **Lyons P'ship, L.P. v. Morris Costumes, Inc.**, 243 F.3d 789, 797 (4th Cir. 2001), for the proposition that "the statute of limitations does not shield the defendant from liability for wrongful acts actually committed during the limitations period, and its rationale applies equally to trademark infringement claims brought under the Lanham Act." The defendant asserts, however, that **Lyons** is inapplicable under the express terms of the Franchise Agreement, whereby the defendant claims the parties contracted out such a theory and agreed to limit claims against each other from the date they arose. Specifically, the defendant points to Paragraph 21(k) of the 1995 Franchise Agreement [Doc. 23-9], which states:

> 21(k) Any claim arising out of or related to this Agreement which is not filed within three years of the date on which the claim arose shall thereafter be barred, unless applicable law provides for a shorter statute of limitations.

The defendant relies on **Harbor Court Associates v. Leo A. Daly Co.**, 179 F.3d 147 (4th Cir. 1999), to support his assertion that the parties have altered the accrual of claims by contract. While that case does permit such agreements, the contractual language in this case does not attempt to limit the accrual of claims. In **Harbor**, the contractual limitation applied to "all acts or failures to act" and stated that "any alleged

cause of action shall be deemed to have accrued in any and all events" not later than a specified time. 179 F.3d at 148. The instant case is readily distinguishable because the survival clause at issue here is not so narrowly written. The provision at issue in this case simply makes no mention of accrual of actions.

The defendant's interpretation of this provision is thus misplaced. Although the contractual language contains the phrase "date on which the claim arose," its plain meaning does not change. Nor does the subject provision place any limiting language on its accrual. In the Fourth Circuit, it is clear that "each [act] should be considered separately under an infringement analysis." **Lyons**, 243 F.3d at 797. Further, "a 'party does not waive the right to sue for infringements that accrue within three years of filing by not asserting related claims that accrued beyond three years.'" *Id*. (quoting **Hotaling v. Church of Jesus Christ of Latter-Day Saints**, 118 F.3d 199, 202 (4th Cir. 1997)). Here, Choice Hotels has established acts constituting new acts of infringement well within the limitations period. Accordingly, the defendant's Motion is **DENIED** insofar as it pertains to this argument.

    B.    <u>Applicable Statute of Limitations for Count IV</u>

Next, the defendant asserts that to the extent that the plaintiff is alleging breach of the Franchise Agreement in Count IV, the same is barred by the applicable statute of limitations period. Defendant Fisher asserts that by letter dated November 12, 2008, Choice Hotels declared that Fisher had breached the Franchise Agreement. Defendant concedes that the parties executed the Reinstatement Agreement on June 17, 2009, but denies that this "somehow resuscitate[d] claims which 'arose' sometime before" that. [Doc. 32-1]. In asserting this argument, the defendant again relies on the contractual provision

at Paragraph 21(k).

Under West Virginia law, contracts enjoy a 10-year limitations period. See W. Va. Code § 55-2-6. It is clear, however, that the parties contracted to shorten that period. The plaintiff thus argues in the alternative that even if the parties contracted for a shorter limitations period, it nevertheless timely filed its claims. Choice Hotels points to its Reinstatement Agreement, which it terminated on November 14, 2011, when it issued the Notice of Termination. The Reinstatement Agreement provided that specific renovations be made and brand compliance be completed "in no event later than twelve (12) months after execution of [the Reinstatement Agreement]." [Doc. 23, ¶ 40]. The parties entered into the Reinstatement Agreement on June 17, 2009. Therefore, this Court finds the breach thereof occurred on June 17, 2010. Choice Hotels filed its breach of contract claim against Fisher on March 21, 2013, within the three-year limitations period. Accordingly, this Court finds the breach of contract claim was timely filed, and the Motion must be **DENIED** insofar as it pertains to this argument.

C. Damages for Breach of Reinstatement Agreement (Count IV)

Under the Reinstatement Agreement, the parties agreed that Fisher would (1) pay a penalty of $10,000, which he did pay, and (2) make certain repairs within one year, in which case Choice Hotels would permit the hotel to reenter the franchise system and be permitted to continue using Choice Hotels' marks.

The defendant asserts that Choice Hotels cannot demonstrate any damages resulting from the alleged breach of the Reinstatement Agreement because, by the express terms therein, Choice Hotels' duty to perform did not arise until Fisher completed the repairs. Only then would Choice Hotels have a duty to accept Fisher's hotel back into the

14

franchise system and reauthorize the use of its marks. Thus, the defendant asserts that because he never completed the requisite repairs, Choice Hotels' duty never arose; accordingly, Choice was never required to nor did it perform and no damages were suffered as a result therefrom.

The plaintiff asserts that Fisher's breach of the Reinstatement Agreement was clearly injurious to Choice Hotels because it prohibited Fisher from reentering the franchise system and serving as an income-generating franchisee under his Franchise Agreement, thereby creating an immediate and direct economic impact on Choice Hotels. Further, the Franchise Agreement specifically provides for liquidated damages in Paragraph 11. Thus, this Court finds that the plaintiff can show damages for breach of contract. Accordingly, the Motion is **DENIED** insofar as it pertains to this argument.

## Damages

A.  Permanent Injunction

Given the ongoing trademark infringement by the defendant in violation of 15 U.S.C. § 1114, plaintiff requests permanent injunctive relief under 15 U.S.C. § 1116. Section 1116 states: "The . . . courts . . . shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . .."

To be granted a permanent injunction, the plaintiff in an action involving trademark infringement must satisfy the traditional permanent-injunction analysis. ***Mary Kay Inc. v. Ayres***, 827 F.Supp.2d 584, 595 (D. S.C. 2011). Thus, the plaintiff must show that:

(1) it has "suffered an irreparable injury;"

(2) the "remedies available at law are inadequate;"

(3) "the balance of the hardships favors" it being granted an injunction; and

(4) "the public interest would not be disserved by the injunction."

**PBM Products, LLC v. Mead Johnson & Co.**, 639 F.3d 111, 126 (4th Cir. 2011).

In **Lone Star Steakhouse & Saloon, Inc., v. Alpha of Virginia, Inc.**, the Fourth Circuit stated that "an injunction is the preferred remedy to insure that future violations will not occur" in a trademark infringement action. 43 F.3d 922, 939 (4th Cir. 1995) (internal quotation marks omitted). The Court also noted that plaintiffs in infringement actions "need not . . . offer[ ] specific evidence of irreparable injury," given that "irreparable injury regularly follows from trademark infringement." *Id*. Though it has not directly endorsed it, the Fourth Circuit has recognized that a "presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case." **Scotts Co. v. United Indus. Corp.**, 315 F.3d 264, 273 & n. 3 (4th Cir. 2002) (noting that district courts within the circuit have applied the presumption). Additionally, the **Lone Star** Court noted that "an injunction in [a trademark infringement case] would serve the public interest by preventing future consumers from being misled." 43 F.3d at 939.

Despite the contractual relationship between the plaintiff and defendant, it is apparent that Choice Hotels has been powerless to ensure the quality of defendant's operation and that the defendant's failed compliance with brand specifications will continue to undermine the public's faith in the plaintiff's products and damage the plaintiff's reputation in the industry with their existing and potential customers. This clearly subjects

16

the plaintiff to irreparable injury. Plaintiffs have also shown that the remedies at law are inadequate and that the balance of the hardships favors their being granted an injunction. Despite plaintiff's numerous attempts to resolve this dispute, and sending numerous letters, making multiple calls, and filing this lawsuit, the defendant continues to use the plaintiff's marks at his business establishment. His infringement is not being thwarted by contact with plaintiff's counsel or by legal action. Defendant's inaction "demonstrates [his] refusal to acknowledge [his] legal obligations, makes the threat of continued infringement likely, and underscores the ineffectiveness of a remedy at law." **Mary Kay**, 827 F.Supp.2d at 596 (internal quotation marks omitted). The balance of the hardships also favors granting a permanent injunction. The defendant is merely being stopped from infringing upon the plaintiff's trademarks. Thus, the plaintiff has satisfied the traditional permanent-injunction analysis.

As such, this Court **ORDERS** that defendant Fisher shall forever be enjoined from using any of the marks in the ECONO LODGE family of marks, including but not limited to, the marks appearing in the '642, '814, '518, '530, '688, '065, '067, and '199 Registrations, or any mark similar thereto. It is further **ORDERED** that the defendant immediately remove all signage, advertisements, menus, websites or any other indicia bearing any of the marks in the ECONO LODGE family of marks and to destroy any such item in his custody or control. Pursuant to 15 U.S.C. § 1116(a), within thirty (30) days of this Order, defendant Fisher shall file a sworn statement of compliance setting forth in detail the manner and form in which the defendant has complied with this injunction.

Finally, a trial on the issues of monetary damages shall take place as scheduled on

May 13, 2014.

## **CONCLUSION**

For the reasons stated above, the Plaintiff's Motion for Summary Judgment **[Doc. 30]** is **GRANTED**, and the Defendant's Motion for Partial Summary Judgment **[Doc. 32]** is **DENIED**. The defendant's Counterclaim **[Doc. 24]** is hereby **DISMISSED**. As such, the Clerk is **DIRECTED** to enter a separate Judgment in favor of the plaintiff on the Counterclaim.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** February 27, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE